IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20–cv–02498–NYW

GILBERT W. LOPEZ,

     Plaintiff,

v.

KILOLO KIJAKAZI,[1] ACTING COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

---

## ORDER

---

Magistrate Judge Nina Y. Wang

     Plaintiff Gilbert W. Lopez ["Mr. Lopez," or "Plaintiff"] brings this action pursuant to the Social Security Act, 42 U.S.C. 405(g), seeking judicial review of a final decision by Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ["Commissioner"], denying his applications for disability insurance benefits and supplemental security income.  (Doc. No. 1.)  Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff has replied.  (["Opening Brief"], Doc. No. 16; ["Response"], Doc. No. 19; ["Reply"], Doc. No. 21.)  The Commissioner has also filed the Administrative Record.  (Social Security Administration Record ["AR"], Doc. No. 14.)  After carefully analyzing the briefs and

---

[1] This lawsuit was initially filed against Andrew Saul, who was then the Secretary of the Social Security Administration.  (*See* Doc. No. 1.)  Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Saul's successor, Kilolo Kijakazi, is "automatically substituted" as Defendant.  Fed. R. Civ. P. 25(d).

the administrative record, the court **REVERSES** the Commissioner's final decision, and **REMANDS** the case for further proceedings consistent with this Order.

<h2 style="text-align:center">BACKGROUND[2]</h2>

Mr. Lopez was born on October 17, 1969; he was thirty-nine years old on the alleged disability onset date.  (AR 211, 214.)  He speaks English and has a tenth-grade education.  (AR 262, 268.)  His employment history includes positions as a meat cutter, a concrete mixing truck driver, a prep cook, a material handler, and a machine packager.  (AR 264, 270-77.)

On January 27, 2009, Mr. Lopez applied for disability insurance benefits, pursuant to Title II of the Social Security Act ["the SSA"], and for supplemental security income, pursuant to Title XVI of the SSA.  (AR 211-19.)  In his applications, Plaintiff claimed that he had been unable to work, since December 11, 2008, due to neck, back, and knee "problems," as well as "depression" and "migraines."  (AR 263; *see* AR 93-94.)  The Commissioner denied Plaintiff's applications on April 28, 2009.  (AR 121-26.)  Plaintiff then successfully requested a hearing before an administrative law judge ["ALJ"], which took place on December 3, 2010.  (AR 38-61.)  On January 18, 2011, the ALJ issued a written decision denying benefits.  (AR 95-116.)  The Appeals Council then granted Plaintiff's request for review of the ALJ's decision, and on April 27, 2012, it remanded the case back to the ALJ for a new hearing.  (AR 117-20.)  A second hearing was then held, on October 3, 2012, before a different ALJ, who then issued a written decision, on October 25, 2012, once again denying Plaintiff's claims for benefits.  (AR 11-37, 62-92.)  On January 31,

---

[2] The following background focuses only on the elements of Plaintiff's history that are relevant to the court's analysis.

2014, the Appeals Council denied Plaintiff's request for review of the ALJ's 2012 decision.  (AR 1-10.)

Mr. Lopez thereafter filed a complaint in federal court, seeking review of the Commissioner's decision, and on January 14, 2015, the district court affirmed that decision.  (AR 733-73.)  Plaintiff then appealed to the Tenth Circuit, and on February 29, 2016, the Tenth Circuit reversed and remanded the case, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings.  (AR 775-85); *see Lopez v. Colvin*, 642 F. App'x 826 (10th Cir. 2016) (unpublished).  A new hearing was then held, on February 6, 2018, before a different ALJ, who then issued a written decision, on May 7, 2018, again denying Plaintiff's claims for benefits.  (AR 643-99.)

On July 18, 2018, Mr. Lopez filed another complaint in federal court, seeking judicial review of the Commissioner's third decision.  Complaint, *Lopez v. Comm'r, Soc. Sec.*, No 1:18-cv-01826-REB (D. Colo. July 18, 2018).  The Commissioner then filed a motion to remand the case again, on November 19, 2018, pursuant to sentence four of 42 U.S.C. § 405(g).  (AR 1592-95.)  The motion was granted on December 19, 2018.  (*Id.*)  On second remand, the Appeals Council vacated the Commissioner's decision and returned the case to an ALJ for further proceedings consistent with the court's order.  (AR 1519-24.)

A fourth hearing was then held, on July 11, 2019, before ALJ Debra L. Boudreau.  (AR 1501-18.)  Mr. Lopez appeared and testified at the hearing, accompanied by his attorney.  (AR 1502, 1505-10.)  The ALJ also heard testimony from a vocational expert.  (AR 1510-17.)  Medical opinions and evidence were provided by two non-examining state agency psychiatric consultants—Ellen Ryan, M.D. and Mark Berkowitz, Ph.D.; two non-examining state agency

physical consultants—Francis Yamamoto, M.D. and Lawrence Landwehr, M.D.; two examining physicians—Justin Olswanger, D.O. and José Vega, Ph.D.; two testifying medical experts—Frank Barnes, M.D. and Robert Pelc, Ph.D.; six treating physicians—David Krause, M.D., Todd Daines, M.D., Andrea Sciamarella, M.D., Rebecca Nolan, M.D., Charles Rowland, M.D., and Scott Davidson, M.D.; and two licensed social workers—Elizabeth Richards and Tom Clemens. (AR 65-81, 374-80, 388-401, 456-58, 462, 472, 474, 504, 536-45, 569, 1403-08, 1427-45, 1446-53, 1776-78, 1804-11.)

At the 2019 hearing, the ALJ heard testimony from Mr. Lopez regarding his impairments. (AR 1505-08.) Mr. Lopez testified that his back pain had recently "gotten worse." (AR 1506.) He reported that, as a result, he can sit, continuously, for no more than twenty minutes before he must stand or walk. (*Id.*) Plaintiff further testified that, due to right knee pain, he can walk, continuously, for no more than fifteen minutes before he must rest. (AR 1507.) Mr. Lopez told the ALJ that he was hoping to get knee replacement surgery within a few weeks, though he admitted that, per his doctor's orders, the surgery would not be scheduled until he quit smoking cigarettes. (*Id.*) Plaintiff reported two previous surgical procedures on his right knee, which he described as "temporary fix[es]" that left him "worse" off than before. (AR 1508.) Mr. Lopez told the ALJ that he was receiving regular treatment from a mental health care specialist, roughly four times each year, mainly for medication management. (AR 1509-10.) Plaintiff reported no recent changes to his medications, including their dosages. (*Id.*)

On July 29, 2019, the ALJ issued a written decision in accordance with the Commissioner's five-step, sequential evaluation process.[3]   (AR 1466-90.)  The ALJ determined, at step one, that Mr. Lopez had not engaged in substantial gainful employment since December 11, 2008, the alleged onset date.  (AR 1469 ¶ 2.)  At step two of her analysis, the ALJ found that Mr. Lopez suffered from six severe impairments: "degenerative joint disease of the right knee," "unspecified bipolar disorder," "post-traumatic stress disorder (PTSD)," "personality disorder," "left shoulder rotator cuff repair," and "mild degenerative disc disease of the lumbar spine."  (AR 1469 ¶ 3.)  The ALJ also found that Mr. Lopez suffered from numerous non-severe impairments, including diabetes mellitus, migraine headaches, ulcers, gastrointestinal reflux disease, chronic pain syndrome, alcohol abuse, nocturnal hypoxemia, bilateral bone spurs, and obesity.  (AR 1469-70 ¶ 3.)  At step three, the ALJ found that Mr. Lopez did not have an impairment or combination of

---

[3] The five-step sequential analysis requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met, or equaled, the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988); *see also McCrea v Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004) (observing that the same five-step sequential analysis applies to eligibility determinations for disability insurance benefits and supplemental security income).  It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four.  *Id.* at 751 & n.2.  The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient residual functional capacity ["RFC"] to perform work in the national economy, given his age, education, and work experience.  *Id.*  A finding that a claimant is disabled, or not disabled, at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  42 U.S.C. § 423(d)(1)(A), (2)(A); *see Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 1470-72 ¶ 4.)

Prior to reaching step four, the ALJ assessed Mr. Lopez's residual functional capacity ["RFC"], for the period from December 11, 2018, until April 30, 2016, and found him capable of light work, subject to the following limitations:

> The claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for six hours in an eight-hour day and he can sit for six hours in an eight-hour day.  He can only frequently use foot controls with the right lower extremity.  He should never climb ladders, ropes or scaffolds, but can occasionally climb stairs and ramps.  He can frequently balance, and occasionally stoop, kneel, crouch, and crawl.  He cannot work at unprotected heights.  He can occasionally work in close proximity to large dangerous moving machinery.  He can understand and remember moderately complex tasks, requiring independent work and decision-making learned and mastered within a one to three month period.  He can sustain concentration, persistence, and pace for these tasks over an eight-hour workday and forty-hour workweek.  He can tolerate occasional interactions with the general public.  He can tolerate occasional work in close proximity to coworkers, defined as tasks that occur within a few feet of a coworker. He is able to tolerate supervision; he can make independent work decisions, tolerate work changes, and is able to travel and recognize and avoid work hazards.

(AR 1472 ¶ 5.)  In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of pain, the objective medical evidence, and the opinion evidence.  (AR 1472-83 ¶ 5.)  The ALJ determined that, while Mr. Lopez's impairments could reasonably be expected to cause some of the alleged symptoms, his testimony regarding the intensity, persistence, and limiting effects of his conditions was "not entirely consistent with the medical evidence and other evidence in the record."  (AR 1474.)  The ALJ likewise concluded that the objective diagnostic evidence and treatment records for this time period, though supportive of some functional limitations, did not support the existence of limitations greater than those set forth in the RFC assessment.  (AR 1483.) In making that finding, the ALJ noted that the evidence within the overall record suggested that

Mr. Lopez's impairments "have been and could all well be controlled through physical therapy, supplemental nocturnal oxygen, and medication." (*Id.*)

In addition, the ALJ extensively documented and discussed the medical opinion evidence covering this time period. (AR 1479-83.) The ALJ first considered a 2010 opinion from treating physician, Todd Daines, M.D., which stated that Mr. Lopez must be "nonweightbearing [sic] for six weeks" post right knee surgery. (AR 1479; *see* AR 462.) The ALJ assigned the opinion "very little weight," because it was "not of sufficient duration to contribute to the determination of disability." (AR 1479.) The ALJ next considered an opinion from a consulting physician, Justin Olswanger, D.O., regarding his April 4, 2009 examination of Mr. Lopez. (AR 1480; *see* AR 374-80.) The ALJ gave Dr. Olswanger's opinion "little weight," because it was inconsistent with Dr. Olswanger's own examination findings, as well "contrary" to other evidence within the record, including Mr. Lopez's 2009 hearing testimony. (AR 1480.) The ALJ also noted that Dr. Olswanger's opinion did not appear to be "an overly reliable estimation of the claimant's long-term functioning," given that it was rendered less than three weeks after Mr. Lopez underwent knee surgery. (*Id.*) In addition, the ALJ considered an opinion from treating physician, David Krause, M.D., dated February 8, 2010. (AR 1480-81; *see* AR 456-58.) The ALJ assigned "little weight" to Dr. Krause's opinion, as it did not reference any actual "impairment[s]," "clinical findings," or "specific treatments" to justify the manipulative limitations contained within, and because it was inconsistent with the contemporaneous objective medical evidence, which revealed conservative treatment and "only minimal" impairments. (AR 1480-81.) The ALJ likewise assigned "little weight" to "multiple med nine forms" within the record, because they were "simple checkbox forms" which did not include "function-by-function limitations" relating to specific

impairments; "little weight" to the 2009 opinion from non-examining state agency psychiatric consultant, Ellen Ryan, M.D., because it was "inconsistent with and unsupported by the evidence showing a severe mental impairment since the alleged onset date of disability;" "very little weight" to the 2010 opinion from treating social worker, Elizabeth Richards, because the limitations assessed within were "not supported by the evidence of record;" "partial weight" to the 2010 opinion from consulting psychologist, José Vega, Ph.D., because his determinations as to "the degree of limitation presented by" Mr. Lopez's "severe mental impairments" were "unsupported by the record;" "little weight overall" to the 2012 opinion from testifying medical expert, Frank Barnes, M.D., because it was "based on generalities," as well as inconsistent with, and unsupported by, contemporaneous examination findings; "little weight, if any," to the 2016 opinion from treating physician, Rebecca Nolan, M.D., because it was "vague, overly broad, and without function-by-function limitations;" and "great weight" to the 2009 opinion from treating physician, Charles Rowland, M.D., as it was consistent with, and "strong[ly] support[ed] by," the objective medical evidence.  (AR 1481-83; *see* AR 388-401, 416, 472-74, 536-45, 569, 1175-83, 1262.)  The ALJ did not discuss or weigh the 2012 opinion from testifying medical expert, Robert Pelc, Ph.D.

The ALJ then made a separate assessment of Mr. Lopez's RFC, for the period running from May 1, 2016 through July 29, 2019, finding him capable of light work, subject to the following limitations:

> The claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for six hours in an eight-hour day and he can sit for six hours in an eight-hour day.  He can only frequently use foot controls with the right lower extremity.  He can frequently reach overhead with the non-dominant left upper extremity.  He should never climb ladders, ropes or scaffolds, but can occasionally climb stairs and ramps.  He can frequently balance, and occasionally stoop, kneel, crouch, and crawl.  He cannot work at unprotected heights.  He can occasionally work in close proximity to large dangerous moving machinery.  He

> can understand and remember moderately complex tasks, requiring independent work and decision-making learned and mastered within a one to three month period. He can sustain concentration, persistence, and pace for these tasks over an eight-hour workday and forty-hour workweek. He can tolerate occasional interactions with the general public. He can tolerate occasional work in close proximity to coworkers, defined as tasks that occur within a few feet of a coworker. He is able to tolerate supervision; he can make independent work decisions, tolerate work changes, and is able to travel and recognize and avoid work hazards.

(AR 1483 ¶ 6.)   In establishing this second RFC,[4] the ALJ evaluated Plaintiff's subjective allegations of pain, the objective medical evidence, and the opinion evidence. (AR 1483-87.) The ALJ again determined that, while Mr. Lopez's impairments could reasonably be expected to cause some of the alleged symptoms, his testimony regarding the intensity, persistence, and limiting effects of his conditions was "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 1483.) In making that determination, the ALJ first reviewed the objective medical evidence for this time period, which contained numerous unremarkable exam findings. (AR 1484-85.) The ALJ referenced a treatment record from April 1, 2017, in which Mr. Lopez reported eye discomfort due to "wearing contact lenses longer than normal and sleeping in them while taking a long trip to California." (AR 1485; *see* AR 1220.) The ALJ noted that such travel was "inconsistent with an inability to sit, stand, or walk for more than 30 minutes." (AR 1485.) The ALJ also referenced a treatment record from October 4, 2017, in which Mr. Lopez reported no discomfort or medical concerns, writing that this was "inconsistent with an assertion of disabling limitations." (*Id.*; *see* AR 1410.) In addition, the ALJ discussed the medical opinion evidence covering this time period, giving "great weight" to the 2018 opinion from non-examining

---

[4] The ALJ apparently made this second RFC assessment to account for "the emergence of [Mr. Lopez's] shoulder impairment and diagnosis of personality disorder" subsequent to his date last insured. (AR 1484.)

state agency physical consultant, Francis Yamamoto, M.D., because it was "well supported by the record and consistent with the evidence;" "great weight overall" to the 2019 opinion from non-examining state agency physical consultant, Lawrence Landwehr, M.D., because it was "generally consistent with the evidence;" "great weight" to two 2018 opinions from non-examining state agency mental consultant, Mark Berkowitz, Psy.D., because they were well-supported by, and consistent with, the objective medical evidence, consistent with each other, and consistent with Plaintiff's testimony; and "little weight" to three opinions from treating physician, Andrea Sciammarella, M.D.—respectively rendered in 2013, 2017, and 2019—because they were each at odds with Dr. Sciammarella's own examination findings. (AR 1485-87; *see* AR 1403-08, 1427-53, 1776-78, 1804-11.)

At step four, the ALJ determined, based on the vocational expert's testimony, that Mr. Lopez was unable to perform any past relevant work. (AR 1487-88 ¶ 7.) However, at the final step of her analysis, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," based on his age, education, work experience, and residual functional capacity. (AR 1488-89 ¶ 11.) The ALJ determined that Mr. Lopez would be able to perform such jobs as a marking clerk, a router clerk, and a package sorter. (*Id.*) For that reason, the ALJ concluded that Mr. Lopez was not under a "disability," as defined by the SSA, from December 11, 2008, through the date of her decision, and denied his application for benefits. (AR 1489 ¶ 12.) That denial prompted Mr. Lopez's renewed request for judicial review. (Doc. No. 1.)

## STANDARD OF REVIEW

In social security disability cases, the court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). Any conflict in the evidence is to be resolved by the ALJ, and not the court. *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Mr. Lopez raises four issues on his present appeal. Plaintiff argues, first, that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ "did not assess" the opinion from testifying medical expert, Dr. Pelc, which were rendered during Plaintiff's 2012 administrative hearing. (Doc. No. 16 at 17-19.) Next, Mr. Lopez argues that the ALJ committed reversible error by failing to appropriately evaluate the 2009 opinion from examining physician,

Dr. Olswanger, in accordance with the Appeals Council's instructions on remand.  (*Id.* at 19-25.)

In his third argument, Mr. Lopez contends that the ALJ failed to properly weigh the 2010 opinion

from treating physician, Dr. Krause.  (*Id.* at 25-29.)  Finally, Plaintiff asks for an immediate award

of benefits, in lieu of a remand for another administrative hearing.  (*Id.* at 29-30.)   The

Commissioner insists, however, that the ALJ properly considered the entire evidentiary record,

and followed the applicable law, in determining that Mr. Lopez is not disabled, and therefore,

neither remand nor an immediate award of benefits is required.  (Doc. No. 19 at 7-16.)

## I.  *Evaluation of Medical Opinions*

It is well-settled that an ALJ has a duty to evaluate all medical source opinions in the record.

*Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015) (quoting *Keyes-Zachary v. Astrue*, 695

F.3d 1156, 1161 (10th Cir. 2012)).  Under the SSA regulations governing this case,[5] "[t]he weight

given each opinion will vary according to the relationship between the disability claimant and the

medical professional."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R.

§ 404.1527(d)).  Generally, medical opinions from treating sources are given "more weight" than

those from non-treating sources.  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see*

*Hamlin*, 365 F.3d at 1215 ("The treating physician's opinion is given particular weight because of

his [or her] 'unique perspective to the medical evidence that cannot be obtained from the objective

medical findings alone or from reports of individual examinations, such as consultative

---

[5] Effective March 27, 2017, the SSA regulations governing the procedures and standards for evaluating medical source opinions were substantially revised.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017), *as amended in* 82 Fed. Reg. 15,132 (Mar. 27, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  However, because Mr. Lopez applied for benefits in 2009, the old regulations apply to his claims here.  *See Olson v. Comm'r, SSA*, 843 F. App'x 93, 95 & n.1 (10th Cir. 2021) (applying old regulations to a claim filed before March 27, 2017).

examinations or brief hospitalizations."). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2)).

In evaluating a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). At step one, the ALJ must determine whether the opinion is conclusive—that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* If the opinion is not supported by medically acceptable evidence, then "the inquiry at this stage is complete." *Watkins*, 350 F.3d at 1300. However, if the ALJ "finds that the opinion is well-supported, she must then confirm that the opinion is consistent with other substantial evidence in the record." *Id.* (citation omitted). If both conditions are met, the ALJ must give the opinion "controlling weight." *Krauser*, 638 F.3d at 1330. "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

If the ALJ declines to afford controlling weight to a treating physician's opinion, or if the opinion is from a non-treating source, the ALJ must determine, at step two, the appropriate amount of weight to give the opinion. *Id.* (citing *Watkins*, 350 F.3d at 1300-01); *see also Mays v. Colvin*, 739 F.3d 569, 578 (2014) (stating that the ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them"). In doing so, the ALJ must "make clear" how much weight she assigns the opinion, and provide "good reasons" for the weight

assigned.  *Vallejo v. Berryhill*, 849 F.3d 951, 955 & n.2 (10th Cir. 2017) (quoting *Watkins*, 350

F.3d at 1300); *see* 20 C.F.R. 426.927(c)(2).  At this stage of the inquiry, "[t]reating source opinions

are still entitled to deference."  *Krauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300-01).

　　　In determining the amount of weight to assign to any medical opinion, the ALJ must

consider the relevant factors set out in 20 C.F.R. §§ 404.1527 and 416.927.  *Watkins*, 350 F.3d at

1300.  Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2)
> the nature and extent of the treatment relationship, including the treatment provided
> and the kind of examination or testing performed; (3) the degree to which the
> physician's opinion is supported by relevant evidence; (4) consistency between the
> opinion and the record as a whole; (5) whether or not the physician is a specialist
> in the area upon which an opinion is rendered; and (6) other factors brought to the
> ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331-32 (10th Cir. 2016) (citing *Watkins*, 350 F.3d at 1301).

Although the ALJ must consider each factor in weighing a medical opinion, she is not required to

engage in an explicit factor-by-factor analysis, so long as her written decision is "sufficiently

specific to make clear to any subsequent reviewers that weight the adjudicator gave to the []

opinion and the reason for that weight."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)

(quoting *Watkins*, 350 F.3d at 1300).  "Finally, if the ALJ rejects the opinion completely, [she]

must then give 'specific, legitimate reasons' for doing so."  *Watkins*, 350 F.3d at 1301 (citing

*Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).

### A.  The Opinion from Dr. Robert Pelc

　　　Dr. Robert Pelc, a licensed psychologist, testified as a medical expert at Mr. Lopez's

second administrative hearing, which was held on October 3, 2012.  (AR 62-92.)  At that second

hearing, Dr. Pelc opined that, based on his review of the medical records, Mr. Lopez suffered from

multiple psychiatric conditions, including manifestations of depression, anxiety, and personality disorders, as well as a substance abuse disorder.  (AR 72-73.)  Dr. Pelc testified that, due to these mental impairments, Mr. Lopez experienced "a mild level of restriction" with respect to activities of daily living; "a moderate level of restriction" with respect to social functioning; a "moderate" level of restriction with respect to concentration, persistence, and pace of "simple information processing;" and a "marked" level of restriction with respect to concentration, persistence, and pace of "more complex or detailed processing."  (AR 73.)  Dr. Pelc clarified that, by "complex or detailed" information processing, he was referring to "things that would be beyond simple and repetitive kinds of tasks."  (AR 75.)  Upon further questioning as to his opinion of Mr. Lopez's functional limitations, Dr. Pelc stated that "if the work is something other than simple and repetitive, or the tasks are more than simple and repetitive[,] I think there would be a problem."  (AR 76.)  Dr. Pelc defined "simple and repetitive tasks" as those "usually involving one or two step operations," offhandedly remarking at one point, "I think the Courts [sic] call[] it unskilled work."  (AR 78-79.)  Dr. Pelc testified that, in his opinion, Mr. Lopez was at least moderately impaired in each of the twenty areas of mental functioning.  (AR 77-78.)  He opined that Mr. Lopez would be able to complete a normal workday and workweek without interruption if the tasks were "simple and repetitive," but suggested that Mr. Lopez would have difficulty doing so if the tasks involved more complexity.  (AR 78-79.)

In her 2019 written decision, the ALJ neither discusses, nor even alludes to, Dr. Pelc's opinion, even though the opinion was clearly a part of the record before her.  The SSA regulations make clear that the ALJ must "evaluate every medical opinion [she] receive[s]," regardless of its source.  20 C.F.R. § 404.1527(c); *accord Hamlin*, 365 F.3d at 1215 ("An ALJ must evaluate every

medical opinion in the record.").  This requirement applies, even to opinions from "not acceptable medical sources."  20 C.F.R. § 404.1527(f)(2).  Further, the ALJ did not incorporate Dr. Pelc's specific restriction—limiting Mr. Lopez to "simple and repetitive tasks"—into her RFC assessment, finding instead that Mr. Lopez could perform "moderately complex tasks, requiring independent work and decision-making learned and mastered within a one to three month period[,]" and that he could sustain "concentration, persistence, and pace" for such tasks "over an eight-hour workday and forty-hour workweek."  (AR 1472 ¶ 5.)  In her written decision, the ALJ did not explain why she did not adopt Dr. Pelc's opinion that Mr. Lopez was limited to simple and routine tasks, and she did not explain why she utilized a different, less restrictive limitation.  *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions.  If the . . . assessment conflicts with an opinion from a medical source, the adjuster must explain why the opinion was not adopted."); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating that the ALJ "must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as the significantly probative evidence [she] rejects").

The ALJ's failure to expressly consider Dr. Pelc's opinion in her written decision, or to give any reason for disregarding it, "was contrary to the requirements of the governing regulations."  *Victory v. Barnhart*, 121 F. App'x 819, 825 (10th Cir. 2005) (citing C.F.R. §§ 404.1527(d) and 416.927(d)); *see Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988) ("An ALJ may not ignore the evidence and make no findings.").  This was "clear legal error."  *Victory*, 121 F. App'x at 825; *Knight v. Astrue*, 388 F. App'x 768, 770-71 (10th Cir. 2010).

The Commissioner, in her response brief, concedes that the ALJ "did not explicitly weigh Dr. Pelc's opinion," and instead, "assessed a less restrictive RFC for semi-skilled work." (Doc. No. 19 at 13-14.)  But the Commissioner argues that the ALJ's error in doing so was harmless, because the ALJ found, at step five of her analysis, that Mr. Lopez could perform the representative occupations of a marking clerk, a router clerk, and a package sorter, all of which have a Specific Vocations Preparation (SVP) of two,[6] meaning that they are "unskilled" positions.  (*Id.*; *see* AR 1488-89 ¶ 11.)  The Commissioner argues that, because Dr. Pelc himself testified that Mr. Lopez could perform "unskilled work," the ALJ's "oversight" with respect to the evaluation of Dr. Pelc's opinion was harmless, because the jobs that she relied on in making her step five finding were all unskilled.  (Doc. No. 19 at 14; *see* AR 79.)  In other words, it is the Commissioner's view that the ALJ would have reached the same ultimate conclusion, *viz.*, a finding of no disability, regardless of the errors made at earlier steps of her analysis.

As a point of clarification, although Dr. Pelc's did reference unskilled work in his testimony, his specific medical opinion was that Mr. Lopez's mental impairments restricted him to "simple and repetitive" tasks.  (AR 78-79.)  The court understands the Commissioner's argument to be, in essence, that a limitation to "simple and repetitive" tasks necessarily equates with the maximum demands of all "unskilled" occupations.  However, the court tends to agree

---

[6] Specific Vocational Preparation (SVP) is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT Appendix C, 1991 WL 688702.  An SVP of 2 is defined as "[a]nything beyond a short demonstration up to and including 1 month." *Id.*

with Mr. Lopez that "[u]nskilled work may be simple, but it is not necessarily repetitive."[7] (Doc. No. 21 at 2.)

At step five of her analysis, the ALJ relied upon the vocational expert's testimony and found that Mr. Lopez could perform the unskilled jobs identified by the vocational expert (*i.e.,* marking clerk, router clerk, package sorter). (AR 1488-89; *see* AR 1510-16.) But the vocational expert was never presented with a question regarding the existence of those jobs that involve only "simple and repetitive" tasks. Rather, at the 2019 hearing, the ALJ presented the vocational expert with just two hypothetical scenarios, both of which proposed an individual who could perform "moderately complex tasks." (AR 1513-16.) There was no finding, either by the ALJ or by the vocational expert, that the three unskilled jobs identified by the vocational expert in response to those hypotheticals could also be performed by an individual who was limited to "simple and repetitive" tasks. As a result, the ALJ's reliance on the three jobs that the vocational expert identified was not supported by substantial evidence. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("[T]estimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision."); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (stating that the ALJ's hypothetical questions "must include all (and only) those impairments borne out of the evidentiary record"); *see also Letellier v. Comm'r of Soc. Sec. Admin.*, No. 13-cv-271-PB, 2014 WL 936437, at *5-8

---

[7] "Unskilled" work, as defined by the SSA regulations, requires the ability to: "(1) understand[], remember[], and carry[] out instructions; (2) mak[e] judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions; (3) respond[] appropriately to supervision, co-workers and usual work situations; and (4) deal[] with changes in a routine work setting." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)) (alterations and internal quotation marks omitted).

(D.N.H. Mar. 11, 2014) (rejecting the Commissioner's near-identical argument—*viz.,* that the ALJ's error in finding the claimant capable of "moderately complex" work instead of "simple" work was rendered harmless by the fact that the vocational expert had identified "unskilled" jobs that the claimant could perform—and observing that the harmless error doctrine should not be used to affirm an ALJ's decision based on "a hypothetical administrative finding that the ALJ did not expressly make in his or her decision").

In this case, there may be a valid basis and explanation to justify the ALJ's RFC assessment, which might be grounded in the record evidence.  However, that justification is the duty of the ALJ, and neither the court nor the Commissioner may engage in post hoc rationalizations of the ALJ's decision.  *Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985); *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).  Rather, the ALJ's treatment of the evidence must be apparent from the written decision.  *Grogan*, 399 F.3d at 1263.  It is the ALJ's duty to consider and resolve ambiguities and material inconsistencies within the record, and to explain the basis for any inconsistencies between the RFC assessed and the medical opinion evidence.  *Tillery v. Schweiker*, 713 F.2d 601, 603 (10th Cir. 1983).  Here, the ALJ erred in failing to discuss and explicitly assign weight to the opinion of Dr. Pelc, and in failing to resolve the ambiguities within the record.  The court cannot confidently say that no reasonable administrative factfinder, following the correct analysis and properly considering Dr. Pelc's opinion, would have reached the identical conclusion as did the ALJ.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (defining harmless error).  Therefore, the court must conclude that Dr. Pelc's opinion constitutes significantly probative evidence which the ALJ failed to discuss in his opinion.  Remand is, therefore, necessary for the Commissioner to evaluate Dr. Pelc's opinion.  *See*

*Carpenter v. Astrue*, 537 F.3d 1264, 1270 (10th Cir. 2008) (holding that the ALJ's step five analysis was "undercut" by the ALJ's failure to discuss medical opinion evidence favoring the plaintiff at earlier steps, and ordering remand on that basis); *Mushero v. Astrue*, 384 F. App'x 693, 696 (10th Cir. 2010) (ordering remand where the ALJ did not discuss a medial opinion, and "neither included the assessed limitations in the RFC determination and the hypothetical questions nor explained why he rejected them").

### B. Remaining Issues

Mr. Lopez raises additional arguments pertaining to the sufficiency of the underlying administrative proceedings.   Because remand is warranted based on the ALJ's failure to appropriately evaluate and weigh the opinion from Dr. Pelc, there is no need to address Plaintiff's other arguments at this time.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) ("The ALJ's failure to develop the record affected the disability analysis as a whole and we therefore do not address the other issues Mr. Madrid raises on appeal."); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (remanding for reconsideration of medical evidence under the proper standards and declining to reach additional issues because "they may be affected by the ALJ's treatment of this case on remand").  Further, this case must be reversed and remanded for further fact-finding, rather than reversed for an immediate award of benefits, as requested by Plaintiff. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (observing that outright reversal and remand for immediate award of benefits is appropriate, only when additional fact-finding would serve no useful purpose).

The court expresses no opinion as to the merit of Plaintiff's other arguments, and neither party should construe the court's silence as tacit approval, or disapproval, of how the evidence was

considered.  This Order should not be read to suggest the result that should be reached on remand; rather, upon remand, the parties and the ALJ are encouraged to fully consider the evidence and all issues raised anew.  *See Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.").

## II.  Conclusion

For the foregoing reasons, **IT IS ORDERED THAT**:

(1)  The Commissioner's final is decision is **REVERSED**.

(2)  This case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

(3)  Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED:  March 29, 2022.                     BY THE COURT:

Nina Y. Wang
United States Magistrate Judge